IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JIMMY HARDEN MURPHY, | ) | |
| #162 386, | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12-CV-224-MEF |
| | ) | [WO] |
| SANDRA GILES, *et al.*, | ) | |
| | ) | |
|    Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter comes before the court on Plaintiff's Motion for a Preliminary Injunction. (*See Doc. No. 1*.) Plaintiff seeks a preliminary injunction seeking to prohibit Defendants from providing inadequate health care for his serious medical needs. Plaintiff also seeks a preliminary and permanent injunction prohibiting Defendants from subjecting inmates to unsafe working conditions. As directed, Defendants filed a response to Plaintiff's request for issuance of a preliminary injunction with respect to his medical claim. (*Doc. Nos. 17, 20, 21*.) Upon consideration of Plaintiff's motion for preliminary injunction and Defendants' responses thereto, the court concludes that the motion is due to be denied.

**I. STANDARD OF REVIEW**

"The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court...." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002) (citations omitted). This court may grant a preliminary injunction only if Plaintiff demonstrates each

of the following prerequisites:  (1) a substantial likelihood of success on the merits; (2) a substantial threat irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. *Palmer*, 287 F.3d at 1329; *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998); *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352 (11th Cir. 1983); *see also Parker v. State Board of Pardons and Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001).

"In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion"' as to the four requisites." *McDonald's*, 147 F.3d at 1306; *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion).  The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see also Siegel v. Lepore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper").  "'The chief function of a preliminary injunction is to preserve the status quo until the merits of the

controversy can be fully and fairly adjudicated.' *Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fl.*, 896 F.2d 1283, 1284 (11th Cir.1990)." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001). The "extraordinary remedy" provided by an injunction is only available when a "legal right has been infringed by an injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue." *Alabama v. United States Army Corps of Eng'rs,* 424 F.3d 1117, 1127 (11th Cir. 2005).

Plaintiff has also filed a request for a permanent injunction. (*Doc. No. 1*.) The standard for a permanent injunction is essentially the same as for a preliminary injunction except that Plaintiff must show actual success on the merits instead of a likelihood of success." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1097 (11th Cir. 2004) (quoting *Siegel,* 234 F.3d at 1213). In addition to succeeding on the merits, a plaintiff must "demonstrate the presence of two elements: continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law." *Siegel*, 234 F.3d at 1213 (quoting *Newman v. State of Ala.,* 683 F.2d 1312, 1319 (11th Cir. 1982)).

## II. DISCUSSION

*A. The Medical Claim*

This court previously denied Plaintiff's request for a temporary restraining order concerning his allegation that he is being denied adequate medical care for a serious medical need. The court summarized the facts from the complaint in this regard as follows:

The alleged facts, stated briefly, relate to and arise out of an incident that occurred on August 22, 2011, at Bullock Correctional Facility. Plaintiff had been assigned to work institutional maintenance, and was tasked to clean a screen located inside a large raw sewage reservoir, which contained human and other forms of waste. Plaintiff was not given any protective or safety equipment to complete the task. As Plaintiff attempted to clean the screen, he fell into the sewage reservoir. As a result of the fall, Plaintiff suffered cuts and abrasions all over his body. In particular, Plaintiff's right arm had a large contusion and a knot at the elbow, and was causing Plaintiff considerable pain. He was unable to bend his right arm at the elbow.

After washing himself, Plaintiff proceeded to the Bullock Correctional Facility Health Care Unit, where a nurse documented and cleaned Plaintiff's injuries and returned him to his dorm without any immunizations for infectious diseases. After several days, Plaintiff's arm remained severely swollen and appeared infected. On August 26, 2011, after a correctional officer observed the extent of Plaintiff's injuries, he was summoned to the Warden Giles's office, and was asked to sign a liability release. Plaintiff refused, whereupon he was escorted to the Health Care Unit. He was examined by a nurse, who administered antibiotics. Plaintiff requested an x-ray, and was told to return on August 29, 2011 to see the doctor. Plaintiff returned on that date, but was ordered to leave by a correctional officer. Plaintiff tried again the next day, and was examined by Dr. Sadeak. Dr. Sadeak advised Plaintiff that his arm was infected, but that Plaintiff had not broken or fractured any bones. Plaintiff's second request for an x-ray was denied. Moreover, Plaintiff was not prescribed any treatment for infectious diseases that might arise from contact with human waste.

Between August 30 and September 6, 2011, Plaintiff's symptoms worsened, and included numbness in his right arm. On September 7, 2011, Plaintiff was examined for a second time by Dr. Sadeak, who again refused Plaintiff's third request for an x-ray.

On October 19, 2011, after Plaintiff had been transferred to Childersburg Community Work Center, Plaintiff tested positive for hepatitis. On December 30, 2011, Plaintiff still was experiencing pain and numbness in his right arm, and requested an x-ray. His request was denied on January 4, 2011. However, he was placed in "chronic care" relating to his hepatitis and blood work results. On February 15, 2012, Plaintiff's final request for an x-ray was denied, when the nurse practitioner told Plaintiff that he appeared healthy.

(*See Doc. No. 7*.)

Turning to the first prerequisite for issuance of preliminary injunctive relief, the court considers whether Plaintiff has proven a substantial likelihood of success on the merits. Having thoroughly reviewed the request for a preliminary injunction, Defendants' responses thereto, and in light of applicable federal law, the court concludes that Plaintiff fails to carry his burden.

Defendants argue that Plaintiff has failed to show a substantial likelihood of success on his Eighth Amendment claim. A violation of the Eighth Amendment requires a showing of "deliberate indifference" to an inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Specifically, an inmate must show that: (1) the prison officials had subjective knowledge of a risk of serious harm; (2) the prison officials disregarded that risk; and (3) the conduct rises above mere negligence. *McElligott v. Foley,* 182 F.3d 1248 (11th Cir. 1999). To establish an objectively serious deprivation of medical care, a prisoner must establish: (1) an objectively serious medical need, and (2) that the response made to the need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or medical malpractice. *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir. 2000). A "serious medical need" is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and, in either case, must be one that if left unattended poses a substantial risk of serious harm. *Kelley v. Hicks,* 400 F .3d 1282, 1284 n. 3 (11th Cir. 2005).

Delay of treatment for a serious condition can rise to the level of deliberate

indifference where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified. *Taylor,* 221 F.3d at 1259-60 (11th Cir.2000) (citing *Hill v. Dekalb Reg'l Youth Ctr.,* 40 F.3d 1176, 1187 (11th Cir.1994), *overruled on other grounds by, Hope v. Pelzer,* 536 U.S. 730, 739 (2002)); *Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1425 (11th Cir.1997). Whether the delay was tolerable depends on the nature of the medical need and the reason for the delay. *Farrow v. West,* 320 F.3d 1235, 1247 (11th Cir.2003).

Assuming, *arugendo*, that Plaintiff has demonstrated the existence of a serious medical condition(s), Defendants argue that Plaintiff has received timely, appropriate, attentive, and adequate medical treatment for his medical issues and concerns. Defendants state that Plaintiff's requests for medical treatment have not been ignored nor, they maintain, have they interfered with Plaintiff's ability to receive necessary medical care. (*Doc. No. 20, Butler Affidavit, Exh. A*.)

Plaintiff's medical records reflect that he arrived at the Childersburg Community Work Center on October 21, 2011. Defendant Butler met with Plaintiff on October 26, 2011 for his initial medical evaluation. Plaintiff did not voice complaints about his right elbow or any other condition but did request that he be tested for hepatitis C. Defendant Butler scheduled the test for early January to ensure he would be available to meet with Plaintiff if he tested positive for hepatitis C. Based upon Plaintiff's medical evaluation at the time, Defendant Butler determined that the delay in testing would not compromise Plaintiff's medical care in any way and would ensure that he was available to provide counseling and

assurance to Plaintiff in the event of a positive test result. (*Doc. No. 20, Butler Affidavit, Exh. A*.)

Plaintiff underwent testing on January 1, 2012. The results came back January 4, 2012 and indicated that Plaintiff has contracted hepatitis C. Because hepatitis C is a often a slow progressing condition, the decision to treat a patient for the disease is difficult due to limited treatment options which themselves can cause serious side effects and complications. As a result, the medical defendants assert that they closely screen individuals with hepatitis C in order to treat the patient in the most efficacious manner. (*Doc. No. 20, Butler Affidavit, Exh. A*.)

Defendant Butler has discussed Plaintiff's test results with him as well as the various treatment options including specific exclusion criteria for patients whom might otherwise be eligible for treatment. The treatment protocol maintained by the Alabama Department of Corrections is well-established and widely accepted. It requires hepatitis C patients to be evaluated on a regular basis through free, regularly scheduled chronic care clinics. Plaintiff has and continues to be monitored for his condition through the chronic care clinic where he receives regular testing and evaluation. (*Doc. No. 20, Butler Affidavit*.)

In addition to seeing Plaintiff for his hepatitis C, medical personnel have examined Plaintiff for his complaints of an elbow injury. He was seen on December 30, 2011 in regard to his complaints of numbness and pain in his arm and hand and received a steroid injection. Plaintiff submitted a sick call request on March 15, 2012 complaining of constipation and abdominal pain and bloating. Defendant Butler examined Plaintiff on March 28, 2012 in

regard to his complaints at which time Plaintiff complained again about pain in his right elbow. Defendant Butler scheduled an x-ray of Plaintiff's right elbow and ordered a wrist splint for him. The x-ray failed to show a fracture or dislocation but did indicate that the pain Plaintiff was experiencing was likely the result of "use" injury such as tendonitis or bursitis. Issuance of the wrist splint to reduce Plaintiff's usage of his right arm should alleviate his symptoms over time. (*Doc. No. 20, Butler Affidavit, Exh. A*.)

After reviewing the medical records submitted in response to Plaintiff's request for preliminary injunctive relief, the court cannot say that Plaintiff has shown a substantial likelihood of success on the merits. Plaintiff's medical records show that medical personnel routinely examine him, evaluate his medical complaints and conditions, and respond in accordance with their evaluations to his various concerns and requests for medical care and treatment. Medical personnel continuously monitor and evaluate Plaintiff with respect to his hepatis C and assert that based on his current health condition, providing him with medical therapy for hepatitis C at this point would likely result in a severe deterioration of his health and could potentially increase the rate at which his disease progresses. (*Doc. No. 20, Butler Affidavit.*)

The court finds no evidence in the record tending to reflect that Defendants have been indifferent to Plaintiff's health conditions or concerns. To the extent there exists a difference in medical opinion as to the provision of medical care, a difference in medical opinion will seldom rise to the level of a constitutional violation and based on the records filed in this matter does not do so in this case. *Hamm v. DeKalb,* 774 F.2d 1567, 1575 (11th Cir. 1985)

(where a prisoner receives adequate medical care but desires to receive a different mode of treatment, the care provided does not amount to deliberate indifference); *Adams v. Poag,* 61 F.3d 1537, 1545 (11th Cir. 1995) (whether a defendant should have used additional or different diagnostic techniques or forms of treatment "is a classic example of a matter for medical judgment and therefore not an appropriate basis for liability under the Eighth Amendment.").

Having found Plaintiff has failed to satisfy the first requirement for either a preliminary injunction or a permanent injunction, the court need not consider the other factors. *See Church*, 30 F.3d at 1342; *Siegel,* 234 F.3d at 1176.

B. *Work Safety Claim*

Plaintiff seeks a preliminary and permanent injunction to prohibit Defendants from maintaining unsafe work conditions at the sewage reservoir located at the Bullock Correctional Facility. Plaintiff has not met his burden of persuasion as to all four prerequisites for obtaining injunctive relief. Plaintiff is no longer detained at the Bullock Correctional Facility. Rather he is currently incarcerated at the Childersburg Community Work Center which is where he was incarcerated at the time he filed this action. Any claims for which Plaintiff is seeking injunctive relief against the named correctional defendants is moot because Plaintiff has been transferred out of the facility where the alleged unconstitutional conduct about which he complains in the pending motion occurred. *See Cotterall v. Paul,* 755 F.2d 777, 780 (11th Cir. 1985) ("Past exposure to illegal conduct does

not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury."); *Spears v. Thigpen,* 846 F.2d 1327, 1328 (11th Cir. 1989) ("[A]n inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred."); *Wahl v. McIver,* 773 F .2d 1169, 1173 (11th Cir. 1985) ("[A] n inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred."). Moreover, Plaintiff's speculative allegations regarding the subject of his request for injunctive relief is not the type of irreparable harm justifying the issuance of a preliminary or permanent injunction. *See Sampson v. Murray,* 415 U.S. 61, 90 (1974) (internal quotation omitted) (this "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [also] weighs heavily against a claim of irreparable harm.").

Plaintiff is not entitled to a preliminary or permanent injunction with respect to his claim of unsafe working conditions at the Bullock Correctional Facility. Accordingly, his request for entry of a preliminary and permanent injunction is due to be denied.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for preliminary injunction filed by Plaintiff with respect to his claim of inadequate medical care and unsafe work conditions (*Doc. No. 1*) be DENIED;

2. The motion for permanent injunction filed by Plaintiff with respect to his claim

of inadequate medical care and unsafe work conditions  (*Doc. No. 1*) be DENIED; and

3.   This case be referred back the undersigned for additional proceedings.

It is further

ORDERED that on or before **July 3,  2012** the parties may file objections to the Recommendation.  Any objection must specifically identify the findings in the Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

The parties are further advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.  Failure to file written objections to the proposed findings in the Recommendation shall bar the party from a de novo determination by the District Court of issues addressed in the Recommendation and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all decisions of the former Fifth Circuit issued prior to September 30, 1981.

Done, this 18th day of June 2012.

/s/Terry F. Moorer
TERRY  F. MOORER
UNITED STATES MAGISTRATE JUDGE