IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JIMMY MURPHY,                    )
                                 )
        Plaintiff,               )
                                 )
v.                               )CIVIL ACTION NO. 2:12-cv-00224-WHA
                                 )                [WO]
                                 )
SANDRA GILES, Warden, et al.,    )
                                 )
        Defendants.              )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I. INTRODUCTION

In this 42 U.S.C. § 1983 action, Plaintiff Jimmy Murphy ("Murphy"), a former[1]

inmate of the Alabama Department of Corrections("ADOC"), challenges his conditions of

confinement and his medical treatment when he slipped and fell into a reservoir of raw

sewage while cleaning a grate in the reservoir.   Named as defendants are Sandra Giles,

Rene Mason, Jesse Austin, Officer McCall, Sergeant Carter, Mattie Jackson, and Harvey

Ruffin ("correctional defendants"); and also named as defendants are Dr. Tahir Siddiq,

James Butler, Wilma Nalls, Shena Massey, Tyce Jeffrey, Leigh Ann Seaman, Corizon, Inc.,

and Correctional Medical Services ("medical defendants").   Plaintiff seeks declaratory and

injunctive relief, damages, court costs and fees, and requests trial by jury.   *Doc. No. 1.*

        The defendants filed special reports and supporting evidentiary materials addressing

---

[1]On May 7, 2014, Murphy informed the court he had been released from prison.  *Doc. No. 69.*

Murphy's claims for relief.  In these documents, the defendants adamantly deny Murphy's allegations.  Additionally, the medical defendants assert that the complaint is due to be dismissed because Murphy failed to properly exhaust an administrative remedy available to him at the ADOC with respect to the claims presented in this cause of action.

"[A]n exhaustion defense ... is not ordinarily the proper subject for a summary judgment; instead it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008).  Therefore, the court will treat the medical defendants' report that Murphy did not exhaust his administrative remedies as a motion to dismiss.  Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the medical defendants' motion to dismiss with respect to the exhaustion defense is due to be granted.  The court construes the correctional defendants' report as a motion for summary judgment, and upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the correctional defendants' motion for summary judgment is due to be granted on the merits of their claims.

## II.  EXHAUSTION

### A.  Applicable Law

The Prison Litigation Reform Act ("PLRA") compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with

2

respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle,* 534 U.S. 516, 532 (2002), "irrespective of the forms of relief sought and offered through administrative remedies," *Booth v. Churner,* 532 U.S. 731, 741 n.6 (2001).   Moreover, "the  PLRA exhaustion requirement requires *proper exhaustion.*"   *Woodford v. Ngo,* 548 U.S. 81, 93 (2006) (emphasis added).

> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage.

*Id.* at 90-91, 93 (footnote omitted); *Johnson v. Meadows,* 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry,* 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam).

Exhaustion under the PLRA is a "threshold matter" that must be addressed before

considering the merits of the case and cannot be waived. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004); *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998) (exhaustion not waivable). "When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. 'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.'" *Myles v. Miami–Dade County Corr. & Rehab. Dep't*, 476 F. App'x 364, 366 (11th Cir. 2012) (quoting *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant*, 530 F.3d at 1373-74)). "If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.'" *Myles*, 476 F. App'x at 366 (quoting *Turner* 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376)). Upon review of the undisputed facts of this case as evidenced by Murphy's verified complaint, the evidentiary materials filed by the defendants, and the Murphy's response, the court concludes that the medical defendants' motion to dismiss is due to be granted.

### B.  Murphy Did Not Exhaust Available Administrative Remedies Before Filing Suit

The record in this case is undisputed that the health care provider for the ADOC provides a grievance procedure for inmate complaints related to the provision of medical treatment. *Butler Aff. - Doc. No. 41-1.* This procedure, as it relates to the Murphy's

claims, is described as follows:

When inmates go through the initial orientation process in the ADOC, they are educated about the availability of the medical grievance process whereby they may voice complaints regarding any medical treatment sought or received during their incarceration. *Id.* ¶ 11.   Murphy acknowledged he understood how to access health care in his institutions. *Doc. No. 41-1*, at 14-15.   The grievance process is initiated when an inmate submits a medical grievance form to the Health Services Administrator ("HSA") by placing it in one of the locked boxes throughout the facility. *Butler Aff. - Doc. No. 41-1*, at ¶ 11. Medical staff review the grievance and return the form to the inmate containing a written response at the bottom of the grievance form within five (5) days of receipt of the medical grievance. *Id.* ¶¶ 11-12.   The grievance form contains a notation apprising inmates that if they wish to appeal the initial response, they may request a grievance appeal form from the HSA.   The notation further directs inmates to return the completed grievance appeal form to the attention of the HSA by placing the form in the sick call request boxes located throughout the facility or by giving it to the segregation sick call nurse on rounds. *Id.* ¶12. Murphy's medical records reflect he submitted one medical grievance dated April 17, 2012, after he filed this lawsuit, in which he complained that: (1) he was experiencing complications related to liver disease, "Hep. C," and (2) severe pain and numbness in is right elbow and failure to treat his elbow "since I fell into raw sewage reservoir at Bullock C.F. on 8/22/2011." *Id.* ¶13; *Doc. No. 41-1*, at 80, CMS 068.   Murphy received a response

5

to the grievance.  *Id.* Defendant states, however, that Murphy did not file a medical grievance appeal regarding the response provided to his grievance.  *Butler Aff. - Doc. No. 41-1*, at ¶ 13.

The court granted Plaintiff an opportunity to respond to the exhaustion defense raised by medical defendants in their motion to dismiss. *Doc. No. 46.*  Murphy submitted a grievance appeal form he filed on May 1, 2012, after he filed this lawsuit. *Doc. No. 54-1*, at 25.  Murphy averred on July 2, 2012, he had not yet received a response to his grievance appeal.  *Murphy Aff. - Doc. No. 54-1,* at 12.  Murphy has not disputed that he failed to file a medical grievance at Bullock and that he failed to exhaust an administrative remedy available to him at the ADOC *before* filing this lawsuit regarding his allegation of inadequate medical care, which is a precondition to proceeding on this claim.  Rather, all of the evidence before the court demonstrates that Murphy failed to complete the medical grievance process before filing suit.  *Plaintiff's Resp. - Doc. No. 54; Defendants' Resp. - Doc. No. 41; Plaintiff's Complaint - Doc. No. 1.*  The court therefore concludes that the medical claims presented in this cause of action are subject to dismissal.  *Woodford*, 548 U.S. at 87-94.

Murphy has been released from prison, and the time for utilizing the grievance procedure has expired.  Thus, the administrative remedy provided by the medical defendants for the instant claim is no longer available to Murphy.  Under the circumstances of this case, the court finds that dismissal with prejudice is appropriate. *Bryant*, 530 F.3d

at 1374-1375 & n.1 (where administrative remedies are clearly time barred or otherwise infeasible inmate's failure to exhaust may "correctly result in a dismissal with prejudice."); *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Johnson*, 418 F.3d at 1157 (same). Consequently, the claims against the medical defendants will be dismissed with prejudice.

## III.  SUMMARY JUDGMENT

The court now addresses the correctional defendants' motion for summary judgment. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of

responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.

The Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to Murphy to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

---

a summary-judgment determination." *Id.*  "'Shall' is also restored to express the direction to grant summary judgment." *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the Defendants' properly supported motions for summary judgment, Murphy is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations"

challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243

(11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case,

Murphy fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment on all of his claims against the defendants. *Matsushita*, 475 U.S. at 587.

### A.  Requests for Declaratory and Injunctive Relief

Murphy is no longer incarcerated in the ADOC.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  As it is clear from the pleadings and records before the court that Murphy is no longer incarcerated in the ADOC, his requests for injunctive and declaratory relief have been rendered moot. *Doc. No. 1*, at 22-23.

### B.  Official Capacity Claims

Murphy sues the correctional defendants in their official capacities. *Doc. No. 1*, at 6.  To the extent the alleged constitutional violations Murphy lodges against correctional defendants are made against them in their official capacities, they are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has

waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

    In light of the foregoing, it is clear that the correctional defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### C.  Summary of Material Facts Regarding the Correctional Defendants

    According to Murphy's verified complaint, on August 22, 2011, while Murphy was an inmate at Bullock Correctional Facility, defendant Sergeant Carter assigned Murphy to work outside, including working under the supervision of defendant Austin, the Maintenance Supervisor. *Doc. No. 1*, at ¶ 13. Murphy alleges that Carter and Austin did not provide Murphy with any safety equipment or protective clothing, such as safety glasses, safety boots, or safety gloves, and they did not provide Murphy any safety training. *Id.*

While he was working under the direction of Austin, Murphy and Austin went to a raw sewage reservoir. *Id.* ¶ 14. Austin ordered Murphy to get a rake and shovel to clean the "screen," which was located inside the sewage reservoir. *Id.* According to his initial complaint, "[a]s the Plaintiff attempted to clean the 'screen' of the said raw sewage reservoir as ordered by Jessie Austin, Defendant, Plaintiff fell into the said raw sewage reservoir which was about waist deep and which exposed Plaintiff to human feces and other hazardous wastes." *Doc. No. 1*, at 6 (footnote omitted).

In contrast to Murphy's verified complaint, Murphy swore in his response to defendants' report that Murphy could not see the reservoir because it had grown weeds and grass around it. *Murphy Aff. - Doc. No. 54-1*, at 4. In his affidavit filed in response to defendants' report, Murphy states that as he approached the reservoir, he noticed a dilapidated fence and a dysfunctional gate around the reservoir. The gate was blocked open and would not close because it was overgrown with weeds about three to four feet high. *Id.* Murphy walked through the open gate, and after about six or seven steps, he fell into the reservoir, which had been obscured by the weeds and grass. *Id.* The reservoir was a concrete receptacle about three feet by six feet, and it contained raw sewage, such as human feces, syringes, trash, and debris that had been flushed down the toilets of the nearby prison. *Id.* He climbed out of the reservoir and noticed he had bleeding, open wounds on his left knee and shin, both hands had cuts and scrapes, and he had a knot on

his elbow[3] that was beginning to swell and cause him pain.  *Id.*  Austin asked Murphy if Murphy was ok.  Murphy said, "I don't know."  *Id.*  Austin then said, "Go ahead and clean the screen since you've already fallen in."  *Id.*  Murphy then cleaned the screen.  They returned to the truck, where Murphy states that Austin said, "I've been waiting for 23 years for somebody to fall in that thing.  I've been telling these people that something needs to be done about this thing"  *Id.*  Austin told Murphy to get in the back of the truck saying, "you stink."  *Id.*  Murphy states he was covered in human waste from just above the waist down to his feet.  *Id.* at 5.  He avers he felt nauseated and vomited in the truck.  When they arrived at the maintenance shop, Austin told Murphy to take a shower.  *Id.*  The shower did not have hot water, and Murphy states the water was so cold it took his breath away.  *Id.*  Murphy states he could not bend his left arm at the elbow because it was swollen.  *Id.*  He had no towel to dry off with, so he waited for Austin to bring him clean clothes.  Austin brought Murphy clothes and then told him to go to the back gate.  *Id.*  There, defendant McCall strip searched Murphy and told him to report to the infirmary.  *Id.*

The medical staff treated Murphy's wounds and prepared a body chart.  *Doc. No. 54-1*, at 27-28.  The body chart documents an abrasion on Murphy's left knee that was not actively bleeding, and an abrasion to his right Achilles tendon from his boot rubbing the skin.  *Id.* The nurse noted no evidence of infection, cleaned the affected areas, and gave

---

[3]Murphy states on page 6 of his March 12, 2012, affidavit that his *left* elbow was swollen, but he states later in the affidavit that his *right* elbow was swollen, and the health care notes from August 26, 2011, indicate his right elbow was swollen.  *Doc. No. 54-1*, at 5-8, 29-30.

Murphy a tetanus booster.  *Id.*  The nurse did not note any swelling to Murphy's elbow.

In contrast to Murphy's statements, Austin submitted an affidavit stating that "[b]oots and gloves are readily available in the maintenance truck for any inmate who wants them.  Inmate Murphy did not request any boots or gloves to perform the job." *Austin Aff. - Doc. No. 44-3*, at 2.  Austin states that "[r]outinely the reservoir's grid gets clogged by rubbish and this prevents waste from passing through the grid.  To clean the grid, an inmate will straddle the grid by placing his feet on the concrete barrier while using a rake to remove trash from the screen."  *Id.* at 1-2.   Austin states that while Murphy was raking the screen bar grid, he accidentally stepped off the concrete barrier[4] with his right foot onto the screen bar grid, causing him to lose his balance and land in the reservoir, which is about two feet deep.  *Id.*  Austin avers that he asked Murphy if he was ok, and Murphy said he had a "scrape or two."  Austin states he asked Murphy if he wanted to the go the Health Care Unit, and Murphy said he wanted to finish cleaning the screen first and then clean up.  *Id.*  In contrast to Murphy's sworn statement, Austin swears he never said anything to the effect of, "go ahead and clean the screen since you've already fallen in." *Id.*  Murphy finished cleaning the screen in a few minutes, then got in the back of the truck, and Austin went to the maintenance shop where Murphy showered.  *Id.*  Austin states it

---

[4]In Murphy's response, Murphy twice referred to Austin's statements that Murphy fell into the reservoir by stepping off the concrete barrier.  *Doc. No. 54*, at 11, 13.  In neither instance does Murphy challenge the accuracy of the statement or suggest he instead fell in when he walked up to the enclosure. Only in Murphy's accompanying affidavit does he state he fell in after he walked about six or seven steps past an open gate.  *Doc. No. 54-1*, at 4.

was very hot on August  22, 2011, and Murphy did not complain about the water temperature.  While Murphy showered, Austin made arrangements for McCall to take Murphy for medical treatment.  *Id.*

Four days later, Murphy avers, defendants McCall, Ruffin, and Harvey  noticed Murphy's swollen elbow.  *Murphy Aff. - Doc. No. 54-1*, at 6.  Murphy states Ruffin escorted him to defendant Giles's office, where defendants Carter, Mason, and Nettles were already present.  *Id.*  Murphy showed them his swollen arm, and Murphy states the arm appeared to be infected.  *Id.* Murphy swears that Giles then said, "I have some papers that I need for you to sign."  *Id.*  Murphy states the papers were a waiver of liability.  Murphy states he said he did not need to sign anything, at which point Giles became visibly upset and summoned Austin to the office.  *Id.*  Giles then ordered Murphy to be escorted to the  infirmary, where he received treatment for his right elbow.  *Id.*  Defendants Giles, Mason, Ruffin swear they never asked Murphy to sign a liability waiver.  *Giles Aff. - Doc. No. 44-1*; *Mason Aff. - Doc. No. 44-2*; *Ruffin Aff. - Doc. No. 44-4.*[5]

Murphy avers that on August 29, 2011, and August 30, 2011, he reported to the infirmary for a scheduled appointment, but defendant Jackson refused to allow Murphy to see a doctor, saying "in a malicious manner: 'the Doctor is busy, He don't have time to fool with you.' 'So go back to your dorm.'"  *Murphy Aff. - Doc. No. 54-1*, at 7.  Jackson swears she never refused to let Murphy see Dr. Siddiq or acted in a belligerent manner; she states

---

[5]No affidavit was submitted from Nettles or Carter.

she never denied inmates their medical treatment.  *Jackson Aff. - Doc. No. 44-5.*

### D.  Eighth Amendment

Murphy argues that defendants Giles, Mason, Austin, McCall, Carter, Jackson, and Ruffin subjected him to unsanitary, unsafe, and inhumane conditions in violation of the Eighth Amendment.  *Doc. No. 1*, at 22.  Defendants argue Murphy states, at best, a claim for negligence and not a violation of the Eighth Amendment, and that they are entitled to qualified immunity.

In the context of a prisoner working in the kitchen, the Court of Appeals[6] has applied the general standard for Eighth Amendment violations, that is, "[a] prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."  *Turner v. Burnside*, 444 F. App'x. 395, 396-97 (11th Cir. 2011) (quotation marks and citation omitted) (holding there was insufficient evidence for a reasonable jury to conclude prison official was aware of substantial risk of serious harm posed by malfunctioning oven); *cf. Buckley v. Barbour Cnty., Ala.*, 2010 WL 1993066, at *6-8 (M.D. Ala. May 17, 2010) (recognizing the unclear standard for prisoner workplace

---

[6]The Court of Appeals decision in *Turner* is not published and therefore not binding precedent, but in addressing the issue of clearly established constitutional law, the court "takes note of the perspective of reasonable jurists who have attempted to articulate the legal landscape [in non-binding precedent].'"  *Alday v. Groover*, No. 14-11899, 2015 WL 364343, at *2 (11th Cir. Jan. 29, 2015) (quoting *Denno v. Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1272 (11th Cir. 2000)).

deliberate indifference claims); *and see Pintado v. Dora*, 2011 WL 794607, at *7-8 (S.D. Fla. Jan. 28, 2011) (using standard that the Eighth Amendment "'forbids knowingly compelling an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful'") (citation omitted), *report and recommendation adopted*, 2011 WL 777887 (S.D. Fla. Mar. 1, 2011).

The court in *Turner* held that to avoid summary judgment, the inmate "plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Turner*, 444 F. App'x at 396 (quotation marks and citations omitted). Deliberate indifference requires "more than a mere possibility of serious harm; instead, there must be a strong likelihood." *Id.* (quotation marks and citation omitted). It held, "the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference." *Id.* at 396-97 (quotation marks and citations omitted). The Court of Appeals explained prison officials may avoid Eighth Amendment liability by showing:

> (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) "that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted."

*Id.* (quoting *Rodriguez v. Sec'y Dept. of Corr.*, 508 F.3d 611, 616 (11th Cir. 2007) (quoting

*Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).

On this record, there is nothing to suggest that any defendant, including Austin, anticipated that Murphy would be exposed to human waste or touch it. Murphy relates inconsistent stories about how he fell into the sewage reservoir. Regardless which scenario described by Murphy is viewed in the light most favorable to him, the defendants' failure to appreciate the risk of harm to Murphy was, at best, negligence and not an Eighth Amendment violation. Cleaning the screen did not require Murphy to touch the waste, and the act of straddling the gate to clean the screen was not inherently dangerous. *See Buckley*, 2010 WL 1993066 at *7 (discussing deliberate indifference to safety rules for "inherently risky work"). Likewise, walking up to the reservoir was not an inherently dangerous activity. Austin's purported statements that, "I've been waiting for 23 years for somebody to fall in that thing" and "I've been telling these people that something needs to be done about this thing," do not create a material question whether Austin anticipated the risk of Murphy falling into the reservoir. Murphy does not dispute that the job was routine maintenance, and he does not suggest that falling into the reservoir was a common, or even likely, occurrence. Instead, it appears Murphy's fall into the reservoir was an unfortunate accident that was not anticipated. As soon as it happened, Austin asked Murphy if he was okay. Even if, as Murphy maintains, Austin told Murphy to clean the screen after he fell in, Murphy was no longer in contact with the sewage when he cleaned the screen, and Murphy does not dispute Austin's estimate that it took "a few minutes" to clean the screen,

thus Murphy was exposed to the waste on his body for an additional few minutes only.

*Austin Aff. - Doc. No. 44-3*, at 2; *see Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) (length of time an inmate is exposed to raw sewage matters, and "not every overflowed toilet in a prison amounts to a constitutional violation"). Murphy was then immediately taken to a shower to wash off, get clean clothes, and go to the health care unit for medical treatment. Austin's efforts to assess Murphy's condition, ensure he was unharmed, get cleaned up, and receive medical treatment all ameliorated the risk of injury and do not suggest Murphy had the intent to ignore a health or safety risk to Murphy when he asked Murphy to clean the screen without offering him protective gear. Rather, the undisputed facts suggest Austin was unaware of the likelihood that Murphy would fall into the sewage reservoir. *See Turner*, 444 F. App'x at 396-97.

Even assuming Murphy's acts constituted an Eighth Amendment violation, the correctional defendants are entitled to qualified immunity. *See Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Murphy cites no materially similar case that would give defendants notice that such behavior violated the Eighth Amendment, and the court has not uncovered one. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (discussing ways to demonstrate a right was clearly

21

established); *see also Willingham v. Loughnan*, 321 F.3d 1299, 1302 (11th Cir. 2003). The

two cases Murphy cites regarding unprotected contact with human waste are inapposite to

the circumstances of his case, and neither are controlling precedent in any event. *Doc. No.*

54, at 5 n.4; *see Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826-27 n.4

(11th Cir. 1997) ("In this circuit, the law can be 'clearly established' for qualified immunity

purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals,

or the highest court of the state where the case arose."). In those cases, the inmates were

knowingly forced to touch human waste while cleaning it. *E.g.*, *Burton v. Armontrout*, 975

F.2d 543, 544 (8th Cir. 1992) (inmates without adequate protective clothing forced to clean

up sewage and not warned sewage was contaminated with AIDS virus and other infectious

diseases); *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990) (inmates without protective

gear forced to work ten minutes in 125F-degree well containing raw sewage, "in a shower

of human excrement" was "'inconsistent with any standard of decency') (citation omitted).

Although "courts have been especially cautious about condoning conditions that include

an inmate's proximity to human waste," *Fruit*, 905 F.2d at 1151, here, no one expected

Murphy to touch raw sewage, and any danger to him caused by his fall in the reservoir was

minimized by Austin's efforts to get him cleaned and medically treated. Thus, the broad

principle that exposure to human waste creates a risk to health does not extend to the facts

here. *See Mercado*, 407 F.3d at 1159 (a right may be treated as clearly established if broad,

clearly established principles control the novel fact situation, or the conduct so obviously

violates the Constitution that prior case law is unnecessary).  It is unfortunate that Murphy fell into the reservoir, but under the circumstances of this case, the failure to provide safety gear ahead of time amount to negligence only, and it did not rise to the level of deliberate indifference to a serious risk to Murphy's health or safety.

In light of the court's ruling that the defendants' failure to provide protective gear to Murphy amounted to negligence only, and that they are also protected by qualified immunity, Murphy's claim that it violated the Eighth Amendment when several correctional defendants tried to get him to sign a waiver of liability also must fail.  Finally, Murphy does not create a genuine question whether Jackson was deliberately indifferent to Murphy's medical needs by refusing to let Murphy see the doctor because Murphy presents no verified medical evidence that any delay in treatment harmed him.  *See Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994) (any claim that specific medical procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Based on the undisputed record, no reasonable juror could find that the correctional defendants acted with deliberate indifference to a serious risk to Murphy's health or safety, and alternatively, the correctional defendants are entitled to qualified immunity.  The correctional defendants are therefore entitled to judgment as a matter of law.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.   Plaintiff Murphy's request for injunctive relief be DENIED as moot;

2.  The motion to dismiss on behalf of the medical defendants be GRANTED to the extent the medical defendants seek dismissal of this case due to Plaintiff Murphy's failure to properly exhaust an administrative remedy previously available to him in the Alabama Department of Corrections.

3.  The motion for summary judgment on behalf of the correctional defendants with respect to the claims for monetary damages lodged against them in their official capacities be GRANTED as all Defendants are entitled to absolute immunity from these claims;

4.  The motion for summary judgment filed on behalf of the correctional defendants in their individual capacities be GRANTED;

5.   This case be dismissed against the medical defendants with prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for the plaintiff's failure to properly exhaust an administrative remedy provided to him during his confinement in the ADOC as this remedy is no longer available to him with respect to the claim presented in this cause of action, and against the correctional defendants in accordance with Federal Rule of Civil Procedure 56.

It is further

ORDERED that on or before March 18, 2015, the parties may file objections to the

Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 2nd day of March, 2015.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATE MAGISTRATE JUDGE